May it please the Court, Steve Sadie from the Federal Public Defender for Daniel Ernst. This case involves the right to counsel of a person who repeatedly said he could not represent himself, while also saying he did not want appointed counsel. It also involves deciding whether an Oregon conviction, which could be for as little as growing one marijuana plant, constitutes a serious drug offense under the Armed Career Criminal Act. It involves the question whether trespassing officers are free to continue their investigatory activities after they've been directed by the homeowner to leave the property. Mr. Ernst represented himself at the time of the stipulated facts trial in this case. At that time, he had told the judge he could not represent himself and he wanted counsel of choice. But his counsel of choice, though, was not somebody who was permitted to practice marijuana, right? And either whether they have a bar card or don't have a bar card, an indigent person does not have a right to counsel of choice. So we are not asserting that he had a right to counsel of choice. We're saying that he did not waive his Sixth Amendment right to counsel. Well, I'm saying, though, that I keep blanking on the name. Was it Ms. Wood? Was it Standby? It ended up being a Standby. The person that he, Terry Woods, he said, I do not want to have Terry Woods represent me. I want this other person who's not even a lawyer to represent me. And the judge said, no, I've told you a thousand times that's not going to happen. And then he said, okay, well, then I guess I'm going to be representing myself. The last part is what didn't happen. He did say, I do not want appointed counsel. And I think the right answer is exactly the answer that Magistrate Judge Coffin gave, which is you have to tell me unequivocally that you want to represent yourself before I'm going to allow appointed counsel to withdraw. He did that in February, right? No. In February, there was a motion filed by Ms. Woods. It did assert that he wanted to represent himself, but he did not state on the record at any time, I want to represent myself. And in March 27th, he files a pleading basically saying, if you understood that as a knowing and intelligent waiver, I am not doing that. And he repeatedly says, I cannot represent myself. That then ends up with the trial that ends in a mistrial. He then gets counsel. He had counsel for 18 months before. Then for another six months, he has counsel during the competency proceedings. Once he's determined competent, the judge says, okay, you now represent yourself. And he says, I can't represent myself. I'm not qualified to represent myself. Those are the words he says on the record. The lawyer, Ms. Woods. During the trial, for example, he said, no lawyer will say what I have to say, and that's why I'm talking for myself, right? So he understood that because of the position he had taken, he was representing himself. He understood that because the court had granted Ms. Woods' request to withdraw, appointed counsel that he was representing himself. But look at the language of Ferretta itself. What Ferretta says is, is there a language where the client is insisting on representing himself? Does he truly want to do so? And just take me back to February, because I guess I'm with you on the factual point. I thought he actually very clearly stated, in February at least, that I don't want Ms. Woods representing me anymore. And he knew that there was no new appointed counsel who actually had a bar license who was going to come in. And so, therefore, I completely agree with your characterization of it as to appointed counsel. He's saying, I don't want appointed counsel. He never said, I want to represent myself. And now you're disregarding the motion that was filed, which said he moves through counsel to grant his request for counsel to withdraw and that he be allowed to proceed to trial pro se. Yes. Because that was filed by Ms. Woods. Yes. And there was no inquiry. And what the Ferretta court looked for was clearly and unequivocally declared he wanted to represent himself and did not want counsel. And that's what we're not seeing is that he didn't want counsel. He says, I am not capable of representing myself. And even if we take the February statement as saying, okay, I do want to represent myself within the meaning of Ferretta, which is a stretch. In March, he's saying, clearly, I cannot represent myself. I am not qualified to represent myself. And by then, we go to the appointment counsel. Essentially, his position was, as in the Massey case, that I don't want to have the only kind of counsel I can have, and I don't want to represent myself. Those were not, insofar as he said, I don't want to represent himself. That was in the context in which he said it. I.e., I don't want a lawyer of the kind you're going to appoint. That's what he kept saying. So if he doesn't want that lawyer, which is the only kind of lawyer he can have, when he's saying I'm not qualified to represent myself, he's saying he wants the kind of lawyer that he can't have. Yes, he is. He is saying, I want counsel of choice. You can't have counsel of choice because you're a poor person. And he's saying, and I don't want, and I won't let myself be represented by these other people, which is what he also said at the trial. He is saying at that point, at that point he is being directed to represent himself without having ever, as said, I am exercising my right to self-representation. That doesn't happen here. He didn't say those magic words, but he said about everything else, and he refused to cooperate with the judge in giving a direct answer. Why isn't this a Massey case? Because in Massey, it involved a, it did not involve, as this case does, a failure to exercise a self-representation right. He doesn't clearly and unequivocally say, I want to represent myself. In fact, he says the opposite. I am unable to represent myself. At that point. And he wants only an unqualified lawyer, a layperson. That's all he, the only choice is he gives the court. That's, and the point is that the, whether he continues. The court makes it clear he can't do that. And the court is the only one with the power to decide whether he goes forward with appointed counsel or not. And once he says, he does not say the magic words, or at least words that functionally say, I insist on representing myself at trial. In the absence of those words, the action for the court is exactly what Judge Coffin did, which is your motion to withdraw counsel is denied. Go forward. Is there any chance that that is what, that what happened, that he wouldn't be here arguing that he wanted to represent himself and wasn't allowed to? I do not think that that, I do not think that argument could be made under those circumstances. If he had said, I want to represent myself, he has a constitutional right to do so. That is emphatically not what happened in this case. He, at the time, if you look at the time of the stipulation, he has said, I cannot, I am not qualified to represent myself. I do not waive my right to counsel. And then Terry Wood says, we should have a Feretta hearing. And they say, no, we're too busy at the time. And it gets, doesn't, nothing ever happens more about Feretta until he is going forward, pro se, for a stipulated facts trial with a mandatory minimum of 15 years. Can I shift you to the fourth amendment violation question? Yes. I guess I saw some merit in the legal argument you put forward, but I couldn't for the life of me understand why it wouldn't be completely harmless given the record in this case. Maybe, and that's what the government argues as a backup, so maybe you could help me with that. Several things, Your Honor. First of all, look at the plea agreement. The plea agreement says that this pro se person going forward is reserving the right to every pretrial motion. Why would, if that pretrial motion, one of the most significant pretrial motions, is harmless, he needs to be advised of that. No, I'm not, I'm going to make sure I'm not getting this case confused with another. I'm not talking about any kind of waiver issue. I'm just saying that the fourth amendment violation related to an incident in 2006, correct? Yes. This case, all of the charges in this case stem from something that happened in 2010. And it seemed like he stipulated to facts that rendered him guilty of what happened in 2010. So why would it matter if the government had acquired some unlawfully obtained evidence in 2006? Under Murray and the cases on fruit of the poisonous tree, there are a number of things that could be fruit of the poisonous tree. First of all, look at the opening statement of the government in the case that was mistried. Half of what they're talking about is what happened in 2006, so it's certainly not. Well, that's not the trial that resulted in his conviction, so I'm looking at the stipulated facts. And that's why I'm saying that this fact of the stipulated facts trial is the result of the illegal activity. How is that the government showed up with a search warrant, a legitimate search warrant, that you haven't challenged in 2010 and found all the stuff that rendered him guilty of the charges he's been convicted of? How could what happened in 2006 in any way impact his guilt for the 2010 crimes? Then why are they begging to have that information before the jury? I don't know. Because it was establishing. Well, what was it establishing? I couldn't quite figure that out. I think they were arguing 404B, that it was to show that he had knowledge. But why was it of any importance? The same firearms were involved in the 2006 and the 2010. Yeah, but so what? I mean, he did not. My understanding is, first of all, the actual suppression hearings seem to be more direct because of the firearms, which surprised me. But as to the firearms, he didn't have the firearms in his physical position in 2006. He didn't have them in his physical position in 2010. And in both instances, they were found in his house. So what's the difference? I believe what they were trying to show is that Carl was going to be a witness, who was going to link the 2006 to the later trial. Well, Carl, if he was a witness, could have said those were his dad's guns without saying anything about 2006. Then we also get to the point of whether the testimony becomes the fruit of the poisonous tree and how many decisions in the case were flipped under Murray versus United States, the fruit of the poisonous tree. But why is it the fruit of the poisonous tree? Apparently, they found the marijuana this time without regard to what they had last, the former search, right? The affidavit, I believe, also had background information about what occurred earlier, and that would have to be... They flew over the property in 2010 and they saw it. That's what provided probable cause to go search in 2010. It had nothing to do with something that happened four years ago. Those plans probably aren't even still there. I think we're assuming too much about the value of what a flyover can establish, especially when they didn't get a search warrant based on that. I think that a lot of what we're looking at in terms of prejudice is, why was the government so intent on doing... Why was the government... Well, that's true in 90% of these cases. I ask that question all the time of the government. You know, why, when you're standing here saying it's our opportunity, make such a big fuss about it before? And I never get a very good answer, but it's not unusual, at least, let's just say that, for the government to fight tooth and nail to get something in. And then, for one thing, I suppose, they never quite know whether it's going to be important or not, so they make a big fuss about it in advance. But it's hard to tell, really, why this is all that important. Well, I believe that you can certainly conclude that it was an important element in the decision to enter a stipulated facts trial, knowing that that evidence was coming in, and that that was sufficiently important for the government to act a pro se defendant who has been told that you will have your right to argue these motions on appeal and will have that preserved. Well, he did, and he is here, and he's arguing it, so that wasn't a misrepresentation of any kind. It certainly isn't a meaningful appeal if we toss it out because, oh, well, as a matter of law, because you entered a stipulated facts trial. I don't know if you want to reserve time, but I didn't say earlier. I do want to. If you do, then you have two and a half minutes now. I will reserve the remaining time, but if the court has any questions about the statutory construction argument, which I think is an important one. It's in your briefs. Thank you, Your Honor. Thank you. And we do read the briefs, as you know. Just so I say it clearly, and I'm sure you know this, if you want to, you are not going to reserve time, but if the appellants want to reserve time, they have to do so on their own behalf. Yes, sir. Good morning. I'm the. . . You're going to reserve time if you feel you don't need it. Well, I think most of the arguments would be. . . I'm not signaling anything. I'm just clarifying the ground rules. Well, I was the prosecutor in this case, and so I was through the whole three-year process, and some of the questions you folks are asking, I'm going to be able to help you with. Can you identify. . . What is the clearest statement you can find in the record in which Mr. Ernst did waive his right to counsel? I'll show you the last part. In which Mr. Ernst waived his right to counsel or invoked his right to represent himself. Well, Mr. Ernst, as you mentioned, Your Honor, never directly said, I know there was one point, but I'm not finding it now, where the judge said, Isn't that right? And he said, Yes. Yeah, that was toward him wanting not to have Terry Wood representing. That's. . . What's your pleasure, the court says, to leave peaceably. . . Pardon? To leave peaceably. Well, are you still asking Ms. Wood to withdraw the defendant? Yes. That's. . . That's what he was asking. He did not want, as Judge Watford mentioned, an attorney to represent him. There was an attorney that could represent him. Judge Coffin mentioned he was between and betwixt back the first time we went through the process, and we went through this process, as you see from the record, and the government's briefed numerous times. Mr. Sady's argument that Judge Coffin had it right, when Judge Coffin first did it, we were still at the beginnings of the case, and was advising him of the dangers and disadvantages of self-representation. And so Judge Coffin, if you will, engaged in what French says is what you're supposed to do in telling the client that wants to go forward without appointed counsel what the dangers might be and how beneficial it would have been for him to have Mr. Weintraub, Mr. . . . Mr. Weintraub said he couldn't. Mr. Ernst wanted another lawyer. Mr. Ernst requested Ms. Wood. Even though he was indigent, Judge Coffin obliged him and gave him the attorney he wanted. Ms. Wood's an outstanding lawyer. Chief Judge Aiken repeatedly said that. I dealt with Ms. Wood trying to resolve the case. But here's the issue that Mr. Sady has to deal with in Excerpt of Record 1105. Mr. Ernst, who's writing his own pleadings, mentions in paragraph 11, the facts and evidence make me wonder why I'm being forced by Magistrate Coffin to only choose Barr, B-A-R, attorney for effective counsel, and the only conclusion I come to is protect the fraud foisted upon me and we the people, and I believe there's no evidence to the contrary. And that's dated July 14th. Now, we all know from Feretta on page 817, 422 U.S. 817, Supreme Court says we confront here a nearly universal conviction on the part of our people as well as our courts that forcing a lawyer upon a one willing defendant is contrary to his basic right to defend himself if he truly wants to. So Mr. Ernst, by his own language, says that he felt that Judge Coffin was forcing him when Judge Coffin would not relieve Ms. Wood the first time. Then we go to Chief Judge Aiken. Chief Judge Fischer cited the pertinent language, but after that on February 23rd, after she talks about how good it would be for Attorney Wood to represent him, which is what the disadvantages and advantages of having a lawyer she's supposed to do, and certainly he knows the nature of the crimes and the penalties, she relieves Ms. Wood, and one of the factors we take into consideration when the presumption is against it, every presumption is against the waiver of counsel, is that we look at what happens next. What's his background? Well, he's represented himself before in a marijuana charge in state court. He didn't do so well, but ultimately he got his conviction reversed on grounds that he was not properly advised of his waiver of counsel. But we also look to his own pleadings, and right after Ms. Wood's done, does this pro se defendant know what he's doing? Well, he asks if he can file electronically his pleadings. He files motions to compel discovery for professional services, for a motion to pay investigations. He has a supporting declaration. That may be informative as to whether he was competent to represent himself, but it's not informative on the question that we're really looking at. More informative, I think, is what he said during the trial, where he did say several times that he was representing himself, and if a lawyer stood up and represented him, there couldn't be any lawyer representing him, and so on. But the fact that he knew what he was doing is not particularly relevant. Well, Judge, your question, or your comment was, was the first trial before he absconded after opening statements. In his opening statement, Excerpt of Record 837 to 838, he states, and this is where I was going to conclude my argument, so I'll do it now, and then if there's questions, I'll answer them. He states, quote, I speak for myself in this case, because no lawyer will say what must be said in my defense. If we don't have a lawyer, we can appoint, but he'll do that. The court and the Bar Association can and will discipline lawyers who are too zealous and too effective. And then, of course, the language you're referring to, Judge Berzon, if any lawyer appears for me during this trial, you will know that he does not, he does so against my will, and I've cited the excerpt of record. Then he absconds, and then a year later, after he's found to be competent, Judge Aiken does the precautions she should, Chief Judge Aiken does, and we go ahead and he's determined to be competent, because these sovereign citizen beliefs, which are radical, but doesn't make him incompetent. And then he comes back to court, he represents himself, he negotiates the settlement. The record's clear that he initiated the resolution of this case. In that. When you say the resolution, you mean the stipulated facts? Stipulated facts. He initiated it. The record shows that he contacted after jury selection through his standby counsel, and Ms. Wood was still there with him, which is a factor we take into consideration on the waiver of the six-member right to counsel. And that was the suggestion of the government, that she stay on the case, and Chief Judge Aiken supplied along with that, and Jury Wood was the one that communicated that Mr. Wood wanted, or Mr. Ernst wanted to resolve his case, and then we went through a somewhat tortured, colloquy to resolve the case, which I'm sure you heard it do. So. What about the 2006 search? The 404B question. Yes. Your brief tried to defend it on the merits. It wasn't particularly persuaded. Is there anything more you want to say about that? Yeah. Your question is, I never get a straight answer why government wants to use 404B evidence. Well. No, no, that's not what I meant. Well, I understand, but I'm going to give you an answer on why we thought it was pertinent. And it was such, I think, by Judge Fischer that Carl Ernst was involved in the case. He was transporting the marijuana across the country in 2010. From that, we do our search federally, and from that we find the firearms incidents of the federal search warrant that were the same firearms that were there in 2006. And Carl was going to be a witness. But why does it matter that there was. It doesn't, ultimately. If I was to do this over again. I mean, particularly because those firearms were not that tied to the Kurd defended in 2000, weren't any more tied to him in 2006 than they are now. They were in his house then. They're in his house now. So what's the difference? There isn't. At the time of the trial, I thought it was relevant. It's the only, if you look back and do it over again, like watching a World Series game, would you have picked up the grounder or not? The answer is, I probably wouldn't have done it. The stipulation of facts, if you look at the record, we were doing that right after he initiated it. We had a jury waiting. We put it together. If I was to draft it again, I would have left it out. He had those firearms in his arms in 2006, but he didn't. In 2006, they were present. It wasn't with him when he confronted the officers in the trial. In 2010, they were also present in the house. Absolutely true. They were no more or less tied to him then than they were now. You're right. And the two clips for the firearm were near the door that he exited when the federal officers arrived. Well, how do you address the fruit of the poisonous tree argument? Because that's a fallback argument. In case that's an issue, Mr. Sadie correctly raised it, and so I used the harmless argument. That was the harmless argument. So even if it does count or was something to be considered, Judge Aiken was wrong in her ruling, it still is harmless. I thought Judge Fischer's question, rather, was how do you respond to your opponent's argument that the very Are you having trouble hearing me? I'm getting a little old. I need some air. Oh, okay. I can't get any closer to this thing. That's just the problem. Your opponent is arguing that his client would never have stipulated to the facts in that second trial, had it not been for this illegally obtained evidence back from 2006. So how do you respond to that argument? I can't respond to what Mr. Ernst was thinking. I can't be that presumptuous. I've dealt with the man for three years in court, in and out, and his avoidance in the basic answers that he gave to the magistrate and the chief judge. I don't know why he initiated those conversations at the last minute after a jury was selected. Could the 2006 search make a difference? Perhaps. Could the fact that his son was going to testify? Perhaps. But perhaps the strongest evidence was, as Judge Berzon pointed out and was mentioned in my brief, is that the Federal warrant was solid. We found the pistol and the clips and the rifle along with the marijuana. He walked out that door. I think we found some cash under a stool he was sitting on. And so that would be enough to have any reasonable defendant go ahead and enter into this plea negotiation to avoid a very, very lengthy life sentence, potentially. So that's the only answer I can give you. I don't want to speculate what he's thinking, because I don't know. But one question is that our case, I'm not sure we have a parallel case in this circuit as to what you look at for harmlessness under these circumstances. I think there's a 10th or an 8th Circuit case that says that you consider whether he would have pled guilty otherwise, and that seems to me to make sense. I don't know what else you would look at in a circumstance in which there wasn't, in fact, a full-blown trial. I don't know how to suggest that to you. I understand from talking to my colleague in this case, Ms. Zusman, who helped me on the brief, that that's certainly a consideration. But do you look at it how a reasonable person, would a reasonable person enter into a plea, given the overwhelming evidence on this side, but for the. Probably. Or do you want to look at the particular defendant. Ask the question that you would ask after a trial as to whether this would have made any difference, because there wasn't a trial. So we don't know what would have eventuated. I mean, had there been a trial, you know, maybe for some reason the evidence would have collapsed. Who knows? If you're asking for a suggestion from a prosecutor, my suggestion is the harmless error analysis would be the same if we looked at it at trial. And that is. How? Because there's no record. Well, the record would be. Actually, in this case, technically there was a stipulated facts trial, but you're correct. But that's my suggestion, is that you look at all the evidence and you say, is this harmless or not. All the evidence floating around in the air, or you look at the. No, all the evidence that was in the stipulation that was presented in this case, or all the evidence that was presented at a trial, if that's what you look at. That's my suggestion. I understand the defense suggestion is, well, I don't know what my client was thinking, but maybe this was a reason why he entered into these negotiations. But, of course, the same issue could arise in a more traditional guilty plea. It could. Without any trial, trial trial, without any stipulated facts. Sure. When you're a defense lawyer, and I haven't been, but I've dealt with them over the years, when you talk to your client, you say this is the evidence that could be used against you. And maybe that was one of the factors. It's not on the record. That's true. Not necessarily in the record. So I understand that's what he would do, but what do we do? I've made my suggestion that you should do the analysis, the same as we do with the record in front of us, and say, would a reasonable person have done this based upon the evidence, as opposed to what this particular defendant would have done? But in a traditional guilty plea case, you're always going to lose that, because there's not going to be a record. And if you're dealing with a constitutional claim, it has to be harmless beyond a reasonable doubt, because there's never going to be a record. I understand that a little bit. I'm not being helpful to you, Judge, because I don't think it's my place in this particular argument to say that, beyond the fact that in this case, with the evidence that was presented at the stipulated facts trial, it was overwhelming and would not have made a difference to a reasonable person. And that's the best I can give you in these circumstances. Well, when you say we don't have a record, I guess I thought we did have a record in the sense that we know what was discovered in the 2010 search, right? And there's been no challenge to the admissibility of any of that evidence. Correct. So I guess that's how I've been looking at it, is that we have this evidence on the table from the 2010 search. Correct. Standing alone, it fully supports the charges of which he was convicted. Correct. So then I look at, well, okay, yeah, there was some other stuff found in 2006, but does that really – was that – The government's answer is it does not. And I think that's the position we've taken. Okay. But it gets back to why we offered it. The reason it's unusual is because usually when there's a suppression hearing, what you're suppressing, if it is suppressed, we'll make it impossible to have the trial, i.e., it's the drugs or it's the gun or it's whatever. Right. And here it's something that's very unusual for that reason. It's fairly peripheral stuff. There's a lot of things about this case I can use, Judge. And the best I can give you is what Judge Wapsford said. I wish I could give you more. And in hindsight, as a prosecutor, I wish I left it out of the stipulation that we were doing it under pretty quick circumstances. The evidence is there. If this was a situation, Judge, where you looked at this and said, but that 404B evidence, but that's not the situation here. All right. My time's about up, and I was going to be short, but apparently not. So thank you. That's our fault. Thank you very much. I'd like to make three points, Your Honor. First, on the last question, the government was just saying that this is a 404B matter. Not at trial it wasn't. At pages 359 to 360 of the excerpts of record, the government asserts that the 2010 criminal conduct is a continuation of its 2006 criminal conduct, and the evidence is inextricably entwined, and the proffered evidence forms an integral part of the ongoing offenses. So we're talking about this crime, this offense in 2010. They were using the evidence and the statements obtained as evidence against him, and as far as he knew, it was coming in. The jury was going to kill him with it. Second, on the question about forcing a lawyer on somebody, that does happen. Well, excuse me, but why was that? Are you talking about the marijuana or the guns? Because as far as the guns are concerned, I still don't understand why the jury was going to kill him. I mean, again, it was the same evidence. The guns were at his house in 2006. The guns were at his house in 2010. Why doesn't it prove that it was his guns? Any more or less. The government was obviously trying to draw a stronger inference of knowledge of their location and possession there because they did not have it in his hands by saying, A, it was there before, B, when it was in the earlier time, it was then returned to him in 2006. It wasn't returned to him. It was returned to his son. Yes. I mean, anything that cuts in the opposite direction. The government was obviously drawing a different, using that information in a different way. But on the phoretic language about forcing, that only applies, you can't be forced if you are unequivocally asserting a right to self-representation. It doesn't apply in other circumstances. For example, under Edwards v. Indiana, you can, a judge can decide you're not capable, and Judge Aikenwood made that type of inquiry. In this case, are you capable even if you are exercising self-representation? Because the judge had done, exactly. Exactly. He said he wanted, do you want, she said to him, don't take it to me you want the Miss Worst to withdraw. Yes, I do. Say, are you. Then what? I think the bench book is the best answer to that. In our reply brief, we set out the, first of all, you establish, are you exercising your right to self-representation? But he wouldn't answer her. She did ask him, but he said, I want to go home or something. And then the question is, okay, you have all these rights, then, knowing all of these rights and dangers, do you still want to exercise your right to self-representation? He would never have answered that question yes. And he just wouldn't answer her. Excuse me. He refused to answer her. And if there's not an answer, there's not an unequivocal invocation of self-representation. In the absence of an unequivocal request, the Sixth Amendment is the default. It's not a default to put somebody who is saying I'm not qualified to represent myself, to represent himself on a case that he's basing life on. I guess, but let's say that the judge asks him, okay, do you want to represent yourself? He says no. Okay. Do you want me to reappoint Ms. Wood? And he says no. I want this lawyer who's not a lawyer. Right. Then what? He says, I appoint Ms. Wood. You say the judge should force Ms. Wood back on him even though he's saying I don't want her to represent me. In this particular case, she was already on because of the competency question. And then there was nothing that happened after that to invoke self-representation. In fact, what should have happened there is that she does not withdraw until there is an invocation of self-representation. When he got up in trial and said if any lawyer is representing me, I don't want them. If the person, yes, and that happens in all competency cases. It happens in cases where the person is under Indiana v. Edwards. If the person's, if the judge decides you are not competent to represent yourself at trial, even though you are competent to assist in your defense, you can, the state can appoint counsel to represent. Given that reality, it's not that shocking to tell the client you have to make a choice and not. All right. But then when he got up before the jury and he said I'm representing myself because no lawyer can talk or say what I want him to say. And if any lawyer stands up here and says they're representing me, they're not because I don't want them. Why isn't that an assertion? That's a definitive assertion. First of all, it's not an assertion. It's a reaction to having been put in a position to represent himself when he didn't want to represent himself. At that time, he had already said I am not able to represent myself. I don't want to waive counsel. The judge says no, you're going forward. So he goes forward. What he says. Your basic proposition then is under Massey, for Massey to apply, he has to overtly, explicitly say I want to represent myself. I think that's what Verretta says. I think that's what this court's precedent-following Verretta says. Okay. So if he says and he's, now is he competent to make that decision? We know that after he goes off for competency, he comes back and there's a finding of competence. Okay. So he's competent to make a decision as to whether he wants self-representation or not. You're saying that's the record? That's the record. Okay. So the posture of this case is he says I won't take my appointed counsel. I don't want her. She doesn't represent me. That's unequivocal. I don't think it's as far as what you're saying. But he did say I do not want appointed counsel. Yes. She doesn't want her. And the only lawyer that I will accept is one who represents my sovereign views, and I don't want any member of the bar. Right? Again, I don't think he went that far. You can construe it that way. The judge could construe it that way. So your response then is under that situation where he is, his alternative is a choice that's not protected by the Sixth Amendment to have a lay person as his lawyer, that he, the judge, must impose upon him the lawyer that he unequivocally does not want. Nor will the type. Yes, because there's two things missing in the scenario that I'm hearing. One is he has not said I insist on self-representation. I want to represent myself. What else is the conclusion, counsel? He's made explicit what he doesn't want, which is appointed counsel within the range of constitutionally required options. And the answer is very simple. You're an indigent person. You don't get to choose who represents you. You don't get to choose a non-credentialed lawyer to represent you. Those are not options. Do you want to represent yourself? No. End of story. You have appointed counsel. She failed to ask that question. Do you, framed in the terms that you put. Which I think is the absolute constitutional minimum. I thought you did ask the question, just didn't answer it. Regardless of whether the, I think the important thing is an assertion, not whether the question is asked. Your time is up. Thank you very much. Thank you, Your Honor. An additional argument, an additional case. The case of the United States v. Hearst just submitted. We'll do a vote again for you to grant your appeal subpoena.
judges: Fisher, Berzon, Watford